# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### COURT FILE NO.: 3:15-cv-00544

MATTHEW J. LACEY AND WIFE,
MELISSA A. LACEY

        Plaintiffs,

vs.

SELECT PORTFOLIO SERVICING, INC.,
a Pennsylvania Corporation;  U.S. BANK,
N.A., successor (Trustee) to BANK OF
AMERICA, N.A., successor by merger to
LASALLE BANK, NA., as trustee for
certificateholders of BEAR STEARNS ASSET
BACKED SECURITIES TRUST 2004-1,
ASSET BACKED CERTIFICATES, SERIES
2004-1 (Holder), EMC MORTGAGE, L.L.C.,
f/k/a EMC MORTGAGE CORPORATION,
JP MORGAN CHASE BANK, N.A.,
ROGERS TOWNSEND &THOMAS, PC.,
(Substitute Trustee) and MICHAEL SPICER
(Substitute Trustee),

        Defendants.

**COMPLAINT**
**(Demand for Jury Trial)**

---

     **COME NOW** Matthew J. Lacey and wife, Melissa A. Lacey (hereinafter "Plaintiffs") by

and through counsel, and makes this Complaint against the following Defendants:  Select

Portfolio Servicing, Inc., U.S. Bank, N.A., as trustee (hereinafter "Trustee"), successor in interest

to Bank of America, N.A., as trustee  successor by merger to LaSalle Bank, N.A.,  as trustee for

1

certificateholders of Bear Stearns Asset Backed Securities, Inc., Asset Backed Certificates, Series 2004-1 (hereinafter "Holder"), EMC Mortgage L.L.C., f/k/a EMC Mortgage Corporation, JP Morgan Chase Bank, N.A., Rogers Townsend & Thomas, PC., (hereinafter "Substitute Trustee") and Michael Spicer (hereinafter "Substitute Trustee")  alleging and saying as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; pursuant to 15 U.S.C. §1692(k) the Fair Debt Collection Practices Act ("FDCPA"); pursuant to 15 U.S.C. §1681p the Fair Credit Reporting Act ("FCRA"); and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2.      Venue is proper in this judicial district because the acts and transactions occurred here, Plaintiffs reside here, and Defendants transact business here.

3.      This action arises out of Defendants repeated violations of the FDCPA 15 U.S.C. § 1692 *et seq*., violations of the FCRA 15 U.S.C. §1681 *et seq*., and violations of North Carolina law by these Defendants and their agents in their illegal efforts to collect an alleged consumer debt from Plaintiffs.

4.       This case is brought within all applicable statutes of limitations for the causes of actions alleged herein.

## PARTIES

5.      Plaintiffs Matthew J. Lacey and wife, Melissa A. Lacey are citizens and residents of Alexander County, North Carolina.

6.      Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) as "natural person(s) obligated or allegedly obligated to pay any debt."

7.       Plaintiffs are "consumers" as defined by North Carolina's Debt Collection

Act titled the Prohibited Acts By Debt Collectors (hereinafter, "NCDCA") at N.C. Gen. Stat. § 75-50(1) as "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes."

8.      Plaintiffs are "consumers" as defined by North Carolina's Prohibited Practices by Collection Agencies statute (hereinafter "NCPPCA") at N.C. Gen. Stat. § 58-70-90(2) as "an individual, aggregation of individuals, corporation, company, association, or partnership that has incurred a debt or alleged debt."

9.      Upon information and belief, Defendant Select Portfolio Servicing, Inc., (hereinafter "Select") is a corporation organized and existing under the laws of the state of Utah with its headquarters in Salt Lake City, Utah, and an office in Jacksonville, Florida.

10.     Upon information and belief, Defendant US Bank, N.A. (hereinafter "US Bank"), is a successor trustee to Bank of America, N.A., successor by merger to LaSalle Bank, N.A., for certificate holders of Bear Stearns Asset Backed Securities, Inc., Asset Backed Certificates, Series 2004-1.

11.     US Bank is a subsidiary of U.S. Bancorp, a financial holding company, that is one of the largest financial banking institutions in the United States.

12.     US Bank is a national bank regulated by the Office of the Comptroller of the Currency with offices across the country, including in North Carolina.

13.     Upon information and belief, Bear Stearns Asset Back Securities, Inc., Asset Backed Certificates, Series 2004-1., was acquired by, and is now owned by, JP Morgan Chase Bank, N.A.

14.     Upon information and belief, Defendant JP Morgan Chase Bank, N.A. (hereinafter "Chase") is a subsidiary of JP Morgan Chase & Co., a financial holding company that is one of the largest financial banking institutions in the United States.

15.     Chase is a national bank regulated by the Office of the Comptroller of the Currency with offices across the country, including in North Carolina.

16.     The financial obligation allegedly incurred by the Plaintiffs was a mortgage they acquired in January 1997, which was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a home mortgage with Unicor Mortgage, Inc.

17.     The alleged debt in this matter is a "debt" alleged to be owed as defined by the NCDCA at N.C. Gen. Stat. § 75-50(2).

18.     The debt in this matter is also a "debt" alleged to be owed as defined by the NCPPCA at N.C. Gen. Stat. § 58-70-90(3).

19.     On or about July 1, 2014, Chase transferred servicing of Plaintiffs' loan to Select after it was alleged to be in default and Select therefore is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

20.     Select is a "debt collector" as defined by the NCDCA at N.C. Gen. Stat. § 75-50(3) as "any person engaging, directly or indirectly, in debt collection from a consumer."

21.     Select is also a "collection agency" as defined by NCPPCA at N.C. Gen. Stat. §§ 58-70-15 and 58-70-90.

22.     Defendants engage in the collection of debts from North Carolina consumers using the mail, telephone, email and/or North Carolina state court system among other means and are engaged in commerce in North Carolina.

23.     At all times relevant to the subject matter of this Complaint, Defendants were involved in business activities in this state including collecting or attempting to collect payments and were therefore engaged in commerce in North Carolina.

24.     Select has subjected itself to the jurisdiction of the courts of the State of North Carolina by having availed itself of the use of the courts of this state; its regular conduct of business in this state as a lender and mortgage service provider; and its further submission to the jurisdiction of the courts of this state pursuant to North Carolina General Statute §1-75.4.

25.     At all times relevant to the subject matter of this Complaint Select was the agent of Chase pursuant to the mortgage servicing agreement between Select and Chase.

26.     At all times relevant Chase is responsible for the acts and omissions of its agent Select.

27.     Select is a "furnisher" of consumer credit information as defined in 15 U.S.C. § 1681s-2.

28.     Select is a "person" as that term is defined in 15 U.S.C. § 1681a(b).

29.     Chase as successor by acquisition of Bear Stearns Asset Backed Securities, Inc., Asset Backed Certificates, Series 2004-1 ("Holder") is and has been at all times relevant to this Complaint, on information and belief, the present holder of Plaintiffs' mortgage obligation after having obtained it after it was allegedly in default and is a debt collector as that term is defined by the FDCPA at 15 U.S.C. § 1692a(6).

30.     Chase is also a "collection agency" as defined by the NCPPCA at N.C. Gen. Stat. §§ 58-70-15 and §58-70-90.

31.     Alternatively, Chase is a "debt collector" as that term is defined in the NCDCA at N.C. Gen. Stat. § 75-50(3).

32. Upon information and belief, Defendant EMC Mortgage LLC., f/k/a EMC Mortgage Corporation, (hereinafter "EMC") is a wholly owned subsidiary of The Bear Stearns Companies, LLC.

33. The Bear Stearns Companies, LLC was acquired by, and is now owned by, JP Morgan Chase so that EMC is now a wholly owned subsidiary of JP Morgan Chase.

34. EMC is a limited liability company organized and existing under the laws of the state of Texas which is headquartered in Lewisville, Texas, and has principal offices in Texas and California.

35. EMC was the servicer of the Plaintiffs' loan when Plaintiffs' filed suit against it in 2010 over mortgage servicing abuse.

36. EMC acquired the Plaintiffs' loan after it was in default and is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

37. EMC is also a "collection agency" as defined by NCPPCA at N.C. Gen. Stat. §§ 58-70-15 and §58-70-90.

38. Alternatively, EMC is a "debt collector" as that term is defined in the NCDCA at N.C. Gen. Stat. § 75-50(3).

39. EMC further engages in the collection of debts from North Carolina consumers using the mail, telephone, email and/or North Carolina state court system among other means and is therefore engaged in commerce in North Carolina.

40. Upon information and belief, Defendant Rogers Townsend & Thomas, PC (hereinafter "Rogers Townsend") is a law firm and professional corporation incorporated in the state of South Carolina with offices in Charlotte, North Carolina.

6

41. Upon information and belief, Defendant Rogers Townsend is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) as any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"

42. Defendant Rogers Townsend was appointed "Substitute Trustee" under Plaintiffs' Deed of Trust in documents that were recorded in the Alexander County Public Registry on July 6, 2014 in Book 574, Pages 2162-2163 and on January 22, 2015 in Book 579, Page 1675-1676.

43. Defendant, Michael Spicer (hereinafter "Spicer") is a lawyer licensed by the state of North Carolina and employee of Rogers Townsend who as its agent also acted as "Substitute Trustee" under Plaintiffs' Deed of Trust.

44. Spicer regularly attempts to collect consumer debts alleged to be due to another using the mail, telephone and / or the North Carolina court system.

45. Spicer is a "debt collector" as defined by the FDCPA at 15 U.S.C. § 1692 a(6).

## BACKGROUND FACTS

46. In 2010 Plaintiffs brought an action for damages against several of the above-named Defendants for their abusive loan servicing practices and to enjoin a foreclosure action that had been initiated against them by Rogers Townsend.

47. In 2010 Plaintiffs' mortgage was being serviced by EMC Mortgage Corporation

48. In 2010 Chase was the holder of Plaintiffs' mortgage note.

49. Upon information and belief, Defendant EMC Mortgage LLC., f/k/a EMC Mortgage Corporation has at all times been owned by Chase.

50. Upon information and belief, Chase remains the current holder of Plaintiffs' note.

51.     The 2010 lawsuit was filed in the General Court of Justice, Superior Court Division, Alexander County, North Carolina, on October 11, 2010, Case No. 10 CVS 596.

52.     At the Defendants' request, the case was removed to the United States District Court for the Western District of North Carolina, Statesville Division, Civil Action No. 5:10-CV-173.

53.     United States Magistrate Judge David Cayer, for the United States District Court for the Western District of North Carolina, Statesville Division, on April 6, 2011, issued a Memorandum and Order requiring the parties to submit all claims in the 2010 lawsuit to binding arbitration.

54.     The parties selected the retired Honorable Judge William Freeman to serve as arbitrator.

55.     The parties voluntarily agreed to mediate the issues prior to arbitration.

56.     The parties participated in two mediations with the second and last one being held on October 1, 2012, at 10:30 a.m. in the office of Bell, Davis & Pitt in Winston-Salem, North Carolina.

57.     Defendants EMC and Chase were represented by counsel, Alan Ruley and Andrew Freeman.

58.     At the mediation on October 1, 2012, at 10:30 a.m., Plaintiffs and their counsel were told by counsel for the Defendants, Alan Ruley and Andrew Freeman that Defendants EMC and Chase would release Plaintiffs from all of the obligations evidenced in that certain promissory note dated January 30, 1997, executed and delivered by Plaintiffs to Unicor Mortgage, in exchange for the Plaintiffs' agreement to resolve all legal claims brought against EMC and Chase.

8

59.     At the mediation on October 1, 2012, at 10:30 a.m., Plaintiffs and their counsel were told by counsel for the Defendants, Alan Ruley and Andrew Freeman that Defendants EMC and Chase would within the same time period cause to be filed with the Alexander County Register of Deeds a Notice which would show full satisfaction of the Deed of Trust recorded in Book 379 at Page 2393, in exchange for the Plaintiffs' agreement to resolve all legal claims against EMC and Chase.

60.     The parties came to an agreement such that all differences between them were resolved and all claims were settled at mediation on October 1, 2012.

61.     Defendants filed a Motion to Enforce Settlement on June 6, 2013.

62.     An Order to Enforce Settlement was issued by the arbitrator William Freeman on November 4, 2013.

63.     On December 16, 2013, the Honorable Richard L. Voorhess, issued an Order stating "the claims giving rise to the instant lawsuit [Civil Action No. 5:10-CV-173] have been disposed of pursuant to a settlement agreement enforced in arbitration.  Accordingly, the **STAY** previously imposed is **LIFTED** and the Deputy Clerk is directed to close the instant civil case."

64.     Frank G. Johns, Clerk for the United States District Court on December 19, 2013, issued a Judgment in Case.

65.     On January 27, 2014, Nationwide Title Clearing, Inc., on behalf of Defendants EMC and Chase filed a document titled Satisfaction of Security Instrument Deed of Trust **Only** with the Alexander County Register of Deeds it was recorded in Book 571, Page 2448.

66.     After the recording of the satisfaction and pursuant to the terms of the Confidential Settlement Agreement, Plaintiffs' believed they owned the property free and clear of any debt or liens.

67.     Plaintiffs were led to believe in their communications with EMC and Chase, that if Plaintiffs dismissed their pending legal actions against EMC and Chase, then EMC and Chase would relinquish their right to collect the underlying mortgage debt from the Plaintiffs.

68.     Plaintiffs relied upon the promises made by EMC and Chase, unaware of EMC and Chase's true intent, and believed they could move forward with their lives.

69.     Plaintiffs decided to buy and open a convenience store.

70.     Plaintiffs searched for and found a convenience store for sale they wanted to buy.

71.     Plaintiffs signed a Purchase Agreement and paid an initial escrow deposit of $2,500 on January 29, 2014.

72.     Plaintiffs named the store Lickity Split, L.L.C., and filed Articles of Organization with the North Carolina Secretary of State on January 21, 2014.

73.     Plaintiffs sought financing to purchase the property from the United Federal Credit Union.

74.      Plaintiffs intent was to pledge the title to their property, the property on which EMC and Chase had agreed to cancel the debt, as collateral for the loan to buy the store and start their business.

75.     Plaintiffs spent countless hours researching and preparing how to own and operate a convenience store, hired a Manager, and purchased over $10,000 in supplies to start their store.

76.     After conducting a title search, the United Federal Credit Union questioned whether the Plaintiffs owned the property free and clear of any liens.

77.     The release recorded on behalf of Defendants EMC and Chase was titled Satisfaction of Security Instrument Deed of Trust **Only** signifying that despite Defendants EMC

and Chase's promise to forgive the note and cancel the lien, they had instead retained the right to collect the underlying debt from the Plaintiffs.

78.     Upon information and belief, The United Federal Credit Union refused to finance Plaintiffs' purchase of the convenience store, because of the cloud on the title to the Plaintiffs' home placed there by the actions of EMC and Chase.

79.     Plaintiffs were unable to secure any other means of financing to purchase the convenience store property.

80.     Plaintiffs expended greater than $10,000 to purchase equipment they now have no use for and no place to store because of their inability to finance the purchase of the convenience store.

81.     Plaintiffs lost their security deposit of $2,500.00 and their dream of owning a convenience store due to the actions of EMC and Chase.

82.     Chase began sending debt collection letters to the Plaintiffs about three months after the release titled <u>Satisfaction of Security Instrument Deed of Trust **Only**</u> was recorded which was on January 27, 2014.

83.     Chase's letters to the Plaintiffs clearly stated they were being sent in an attempt by Chase to collect on that certain promissory note dated January 30, 1997, executed and delivered by Plaintiffs to Unicor Mortgage.

84.     The letters continually referenced the underlying debt that Chase had agreed to forgive pursuant to the terms of the Confidential Settlement Agreement.

85.     Shortly thereafter, on April 9, 2014, the Plaintiffs received a letter from Defendant Chase titled in bold **Acceleration Warning (Notice of Intent to Foreclose)**.

86.     EMC and Chase's deceptive acts induced the Plaintiffs to dismiss all

legal claims they had alleged against them in the 2010 lawsuit, in exchange for EMC and Chase's false promise of forgiving the Note and filing a full satisfaction of the Deed of Trust in the Alexander County Public Registry.

87.     EMC and Chase benefited financially from having the litigation resolved against them and then again attempting to collect the debt from the Plaintiffs and foreclose on their home.

88.     On April 25, 2014, EMC recorded an assignment in the Alexander County Public Registry in Book 573, Page 1849 to Chase as attorney in fact for US Bank.

89.     The recorded assignment was prepared by Rogers Townsend.

90.     Chase filed a Notice of Substitution of Trustee on June 16, 2014, in Book 574 at Page 216-2163 appointing Rogers Townsend Substitute Trustee of the Plaintiffs' Deed of Trust.

91.     The same Deed of Trust recorded on January 31, 1997, in Book 379 at Page 2393 in the Alexander County Public Registry which EMC and Chase had agreed to file a  document reflecting the same Deed of Trust as being fully satisfied.

92.     The Notice of Substitute of Trustee was placed on record by Chase three months before Select filed a document titled Document of Rescission on August 21, 2014, recorded in Book 576 at Page 765- 766 in the Alexander County Public Registry stating "The release was recorded in error, is hereby rescinded, and is declared to be of no effect."

93.     The document titled The Document of Rescission was filed by Defendants with the intent of deceiving third parties into believing that Select, EMC and Chase had a lien on Plaintiffs' property with knowledge the property had been given to the Plaintiffs lien-free by EMC and Chase.

94.     The Document of Rescission applied to the same Note and Deed of Trust that EMC and Chase agreed to cancel pursuant to the Confidential Settlement Agreement between the parties.

95.     Rogers Townsend was again appointed Substitute Trustee of Plaintiff's Deed of Trust on January 22, 2015.

96.     From that point forward Rogers Townsend began bombarding Plaintiffs with foreclosure notices and other debt collection letters including one dated February 18, 2015, titled **Notice of Hearing on Foreclosure of Deed of Trust.**

97.     The last Notice was signed by Michael Spicer as Substitute Trustee and commanded Plaintiffs to appear on April 17, 2015, at 10:30 am in the Clerk's Office of the Alexander County Courthouse.

98.     Attached as Exhibit A to the Notice of Hearing on Foreclosure of Deed of Trust was a certification signed by a Chase employee named Jessie Bickley on May 27, 2014.

99.     Exhibit A to the Notice of Hearing on Foreclosure of Deed of Trust was a verification of the debt and it stated that the "last scheduled payment made by the borrower was 4/1/2008."

100.    In furtherance of the deception, Chase sold servicing rights to Select after Chase had given the property to the Plaintiffs pursuant to the Confidential Settlement Agreement.

101.    Plaintiffs received a notice stating that as of July 1, 2014, Select would be servicing their mortgage loan.

102.    In the 2010 lawsuit, a Rogers Townsend attorney, David Simpson, was the Substitute Trustee and was served with a Summons.

103.    On January 12, 2011, another attorney with Rogers Townsend, Lacey

Moore, file a 28 page Answer to the Plaintiffs' Amended Complaint in the initial 2010 lawsuit on behalf of David Simpson as Substitute Trustee.

104.     David Simpson and the law firm of Rogers Townsend were served with copies of all court filings in the 2010 lawsuit.

105.     Select, Rogers Townsend and Spicer have been relentless in their pursuit of, and attempts to, collect the alleged debt from Plaintiffs.

106.     Plaintiffs have received over one hundred (100) documented telephone calls from Select in its attempts to collect the alleged debt after it became the servicer of the mortgage loan from July 1, 2014 to March 17, 2015.

107.     Select continued to call Plaintiffs despite being repeatedly told by Mrs. Lacey that she and her husband were given the home by EMC and Chase pursuant to a Confidential Settlement Agreement.

108.     Select reported to the credit reporting agencies that a foreclosure had been initiated against Mr. Lacey despite the fact he had been given the property by EMC and Chase.

109.     Plaintiffs were led to believe by EMC and Chase that the differences between the parties had been resolved, only to be placed back in the same position they found themselves in 2010.

110.     EMC and Chase's blatant material breach of the Confidential Settlement Agreement has caused Plaintiffs to suffer serious harm.

111.     Plaintiffs have suffered and continue to suffer tremendous emotional and financial harm at the hands of these Defendants.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### EMC and Chase

112.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

113.     The primary purpose of the mediations and the parties entering into a Confidential Settlement Agreement was the resolution of the claims alleged in the 2010 lawsuit.

114.     North Carolina Courts have ruled that "a settlement agreement is a contract governed by the rules of contract interpretation and enforcement." *Hardin v. KCS International, et.al.*, 199 N.C. App. 687; 682 S.E.2d 726 (2009)

115.     EMC and Chase entered into a Confidential Settlement Agreement with Plaintiffs pursuant to which EMC and Chase promised to release and forever discharge Plaintiffs from all of the obligations evidenced in that certain promissory note dated January 30, 1997, executed and delivered by Plaintiffs to Unicor Mortgage and all amendments thereto.

116.     EMC and Chase in furtherance of such release agreed that within the prescribed time period they would file a Notice of Satisfaction of the Deed of Trust in the Alexander County Register of Deeds showing a full satisfaction of the Deed of Trust recorded in Book 379 at Page 2393.

117.     EMC and Chase pursuant to the terms of the Confidential Settlement Agreement caused to be filed a release titled Satisfaction of Security Instrument Deed of Trust **Only** with the Alexander County Register of Deeds on January 27, 2014, recorded in Book 571, Page 2448.

118.    EMC and Chase materially breached their Confidential Settlement Agreement with the Plaintiffs by filing the Satisfaction in this manner and reserving for themselves the right to collect the underlying debt.

119.    North Carolina Courts have long held that a material breach of a contract is a breach of a covenant that "is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted." *Wilson v Wilson*, 261 N.C. 40, 43, 134 S.E.2d 242-243 (1964).

120.    "A breach of such a covenant amounts to a breach of the entire contract; it gives to the injured party the right to sue at law for damages." *Wilson v Wilson*, 261 N.C. 40,43, 134 S.E.2d 242-243 (1964).

121.    EMC and Chase's overt act of retaining the right to collect the underlying debt represents a false representation of a material fact which clearly does not reflect the promises EMC and Chase made to the Plaintiffs.

122.    EMC and Chase's overt act of retaining the right to collect the underlying debt is so material to the contract that its effect is to defeat the very terms of the agreement that was made between the parties.

123.    EMC and Chase despite promising pursuant to the Confidential Settlement Agreement to release and forever discharge Plaintiffs from all obligations evidenced in that certain promissory note dated January 30, 1997, began collection efforts against Plaintiffs on or around the beginning of April 2014.

124.    EMC and Chase despite promising pursuant to the Confidential Settlement Agreement to release and forever discharge Plaintiffs from all obligations evidenced in that

certain promissory note dated January 30, 1997, transferred the servicing rights on Plaintiffs alleged mortgage to Select on or around July 1, 2014.

125. Select sent notice to Plaintiffs that, as of July 1, 2014, Select would be the new servicer of their alleged loan.

126. Select on August 21, 2014, filed a <u>Document of Rescission</u> in the Alexander County Public Registry by and through an attorney stating, "The release was recorded in error, is hereby rescinded, and is declared to be of no effect."

127. EMC and Chase's failure to fully perform their duties under the Confidential Settlement Agreement constitutes a material breach of the contract between the parties.

128. EMC and Chase's overt act of retaining the right to collect the underlying mortgage debt from the Plaintiffs represents a material breach of an essential part of the bargain between the parties.

129. EMC and Chase's overt act of retaining the right to collect the underlying mortgage debt from the Plaintiffs and their failure to file the proper release of the Deed of Trust recorded in the Alexander County Public Registry, represents such an indispensable part of what both parties intended, the contract would not have been made had those terms been omitted.

130. The filing of the Document of Rescission by Select on behalf of EMC and Chase was an intentional and willful act constituting a material breach of the agreement between the parties.

131. As a direct, foreseeable, and proximate result of EMC and Chase's material breach of the contract between the parties, Plaintiffs have been damaged in an amount to be determined according to proof at the time of trial, to include, in addition to equitable relief, specific performance of the contract; actual and consequential damages, including expectation of

lost profits from the convenience store, as specified in the prayer but including specifically loss of escrow deposit, loss of filing fee with the Secretary of State, and convenience store supplies, and any other relief deemed appropriate by the Court.

### SECOND CLAIM FOR RELIEF
**Unfair and Deceptive Acts and Practices**
**(N.C. Gen. Stat. §75-1.1)**
**EMC and Chase**

132.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

133.    EMC and Chase engaged in unfair and deceptive business practices in or affecting commerce when EMC and Chase met with and made promises to the Plaintiffs which Plaintiffs deemed trustworthy, without Plaintiffs having the knowledge that EMC and Chase did not intend to keep the promises made.

134.    EMC and Chase engaged in unfair and deceptive business practices in or affecting commerce when they reneged on their promises to Plaintiffs to release and forever discharge them from all of the obligations evidenced in that certain promissory note dated January 30, 1997, executed and delivered by Plaintiffs to Unicor Mortgage and all amendments thereto.

135.     EMC and Chase engaged in unfair and deceptive business practices in or affecting commerce when EMC and Chase failed to record a release as they had promised with the Alexander County Register of Deeds which would have shown a full satisfaction of the Deed of Trust recorded in Book 379 at Page 2393, in the Office of the Register of Deeds for Alexander County, North Carolina.

136.    EMC and Chase engaged in unfair and deceptive business practices in or affecting commerce when EMC and Chase failed to release Plaintiffs from the obligation of paying the underlying mortgage debt as they had promised.

137.    EMC and Chase engaged in unfair and deceptive business practices in or affecting commerce when EMC and Chase attempted to collect the underlying mortgage debt from Plaintiffs, and when the debt could not be collected, authorized the initiation of foreclosure proceedings on a property they had given to the Plaintiffs.

138.    EMC and Chase engaged in unfair and deceptive business practices in or affecting commerce when EMC and Chase, through Select, filed the Document of Rescission and continued collection and foreclosure efforts on the alleged debt.

139.    EMC and Chase engaged in unfair and deceptive business practices when Chase transferred servicing rights of Plaintiffs alleged mortgage to Select.

140.    EMC and Chase engaged in unfair and deceptive business practices in or affecting commerce when EMC and Chase initiated collection efforts again for a debt no longer owed by Plaintiffs.

141.    EMC and Chase have engaged in unfair and deceptive business practices in or affecting commerce that have proximately caused serious emotional and financial injury to the Plaintiffs.

142.    EMC and Chase engaged in unlawful business acts or practices in violation of N.C. Gen. Stat. §75-1.1 in their dealings with Plaintiffs mortgage debt.

143.    EMC and Chase engaged in unfair business acts or practices in violation of N.C. Gen. Stat. §75-1.1 in their dealings with Plaintiffs and the alleged mortgage debt.

144.    EMC and Chase engaged in deceptive business acts or practices in violation of N.C. Gen. Stat. §75-1.1 in their dealings with Plaintiffs and the alleged mortgage debt.

**Select**

145.    Plaintiffs reallege the foregoing facts and show that Select engaged in unfair and

deceptive business practices in or affecting commerce when Select continued to misrepresent the nature of the alleged debt to Plaintiffs, the Credit Reporting Agencies, the Alexander County Register of Deeds and the public.

146.    Select engaged in unfair and deceptive business practices in or affecting commerce when it ignored Plaintiffs' claims that they were given the property in a Confidential Settlement Agreement with EMC and Chase, and then by failing to research the claims to determine the validity of the alleged debt owed by Plaintiffs.

147.    Select engaged in unfair and deceptive business practices in or affecting commerce when it filed the Document of Rescission and began collection and foreclosure proceedings on the alleged debt once it had notice of the legitimate dispute of Plaintiffs.

148.    Select engaged in unfair and deceptive business practices that have proximately caused serious emotional and financial injury to the Plaintiffs.

149.    Select engaged in unlawful business acts or practices in violation of N.C. Gen. Stat. §75-1.1 in its dealings with Plaintiffs' alleged mortgage debt.

150.    Select engaged in unfair business acts or practices in violation of N.C. Gen. Stat. §75-1.1 in its dealings with Plaintiffs' alleged mortgage debt.

151.    Select engaged in deceptive business acts or practices in violation of N.C. Gen. Stat. §75-1.1 in its dealings with Plaintiffs' alleged mortgage debt.

152.    EMC, Chase and Select have repeatedly made misrepresentations to the Plaintiffs falsely, with knowledge of the falsity of the representations, and with reckless disregard as to whether the representations were true or false.

153.    EMC, Chase and Select have continually made misrepresentations with the intent of misleading Plaintiffs into relying on the statements described above.

154. Plaintiffs justifiably relied upon the representations of EMC, Chase and Select as detailed above.

155. As a result of EMC, Chase and Select's misrepresentations, Plaintiffs have suffered and continue to suffer serious emotional and financial harm.

156. EMC, Chase, and Select's acts and omissions have proximately caused economic and emotional injury to Plaintiffs; are in and affecting commerce; have the capacity to deceive an ordinary consumer; are unscrupulous, immoral, and oppressive; occurred in the context of a fiduciary relationship; and constitute unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, thereby entitling Plaintiffs to the relief requested in this Second Claim for Relief.

157. As a direct, foreseeable, and proximate result of EMC, Chase and Select's wrongful actions alleged herein, Plaintiffs have been damaged in an amount to be determined according to proof at the time of trial, in addition to equitable and/or injunctive relief, as specified in the prayer, plus the right to attorney fees and treble or punitive damages pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1.

## THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### EMC and Chase

158. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

159. Plaintiffs' relationship with EMC and Chase was more than an ordinary debtor-creditor relationship.

160. Plaintiffs believed that a "special confidence" existed between the parties and that EMC and Chase in equity and good conscience would be bound to act in good faith and with due regard to the interests of the Plaintiffs.

161.    EMC and Chase had a special relationship with the Plaintiffs, that led Plaintiffs to believe it was a relationship of trust.

162.    A fiduciary duty arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence. *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931).

163.    Plaintiffs relied upon the promises made by EMC and Chase, unaware of EMC and Chase's true intent, and were led to believe that if they dismissed their pending legal actions against EMC and Chase, then EMC and Chase would relinquish their right to collect on the underlying mortgage debt from the Plaintiffs.

164.    Plaintiffs would not have agreed to resolve all legal claims at mediation if they had been aware of the true intent of EMC and Chase.

165.    Plaintiffs trusted that EMC and Chase would fulfill their promises by forgiving the underlying debt and recording a release that would show a full satisfaction of the Deed of Trust in the Alexander County Public Registry.

166.    EMC and Chase had a fiduciary relationship with Plaintiffs.

167.    EMC and Chase breached their fiduciary duty when they failed to act in good faith by reneging on the promises they made to the Plaintiffs, and by not revealing to the Plaintiffs their true intent which was to retain the mortgage debt for collection purposes to benefit themselves.

168.    EMC and Chase breached their fiduciary duty when they failed to act in honesty in belief or purpose by reneging on the promises made in the Confidential Settlement Agreement when they failed to forgive the underlying mortgage debt, and failing to record release that

would have shown a full satisfaction of the Deed of Trust on the Alexander County Public Registry and by having their agent Select file the Document of Rescission.

169.    EMC and Chase breached their fiduciary duty when they failed to act in faithfulness to their duty and obligations by reneging on the promises made in the Confidential Settlement Agreement by failing to forgive the underlying mortgage debt, by failing to record a release that would have shown a full satisfaction of the Deed of Trust on the Alexander County Public Registry and by having their agent Select file the Document of Rescission.

170.    EMC and Chase breached their fiduciary duty when they failed to observe reasonable commercial standards of fair dealing in a given trade or business by reneging on the promises made in the Confidential Settlement Agreement, by not revealing their true intent of retaining the mortgage debt, by failing to forgive the underlying mortgage debt, by failing to record a release that would have shown a full satisfaction of the Deed of Trust on the Alexander County Public Registry and by having their agent Select file the Document of Rescission.

171.    EMC and Chase breached their fiduciary duty when they sought an unconscionable advantage by attempting to collect on a debt from Plaintiffs that EMC and Chase had promised to forgive, and by failing to record a release that would have shown a full satisfaction of the Deed of Trust on the Alexander County Public Registry and by having their agent Select file the Document of Rescission.

172.    EMC and Chase failed to act with due regard to the Plaintiffs' interests.

173.    EMC and Chase acted in bad faith by reneging on the promises they made to the Plaintiffs in the parties Confidential Settlement Agreement.

**Rogers Townsend and Spicer**

174.    North Carolina Courts have found that a trustee of a deed of trust stands in a fiduciary relationship with both the debtor and creditor.  *In re Vogler Realty, Inc.*, 365 N.C. 389, 397, 722 S.E.2d 459, 465 (2012).

175.    Rogers Townsend was appointed as Substitute Trustee "to have all the powers, duties and obligations conferred by the Deed of Trust" executed by the Plaintiffs.  There were two appointments recorded in the Alexander County Public Registry, the first on June 16, 2014, in Book 574, Page 2162-2163 and a second on January 22, 2015, in Book 579, Page 1675-1676.

176.    Fiduciary duties may be established in "a variety of circumstances" within any relationship "where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)

177.    A "trustee must be impartial in the performance of his duties" and cannot "give an unfair advantage to one [party] to the detriment of the other." *Hinton v. Pritchard,* 120 N.C. 1, 3-4, 26 S.E. 627, 627 (1897).

178.    Rogers Townsend and Spicer had a fiduciary duty to act with due regard to Plaintiffs' interests.

179.    A fiduciary duty existed between Plaintiffs and Rogers Townsend as Substitute Trustee.

180.    A fiduciary duty also existed between Plaintiffs and Spicer as an employee of Rogers Townsend in his role as Substitute Trustee.

181. Rogers Townsend and Spicer as Substitute Trustees breached their fiduciary duty to Plaintiffs by failing to conduct a due diligent search of the title to the Plaintiffs property before they began debt collection efforts and initiating another foreclosure action against them.

182. Rogers Townsend and Spicer as Substitute Trustees acted in bad faith by failing to review their own office records, failing to review the available State and Federal Court records, and failing to contact any of the attorneys that served as counsel to the Plaintiffs or Defendants in the 2010 lawsuit before beginning collection and foreclosure efforts.

183. Upon information and belief, Rogers Townsend and Spicer have conducted so many foreclosures as Substitute Trustees that their overt actions show they no longer have an honest belief that any debtor (in this case the Plaintiffs) could have a legitimate defense to a foreclosure proceeding.

184. Rogers Townsend and Spicer as Substitute Trustees acted in bad faith by failing to diligently research the title to Plaintiffs' property before initiating collection and foreclosure actions against them.

185. Plaintiffs assert that a simple investigation would clearly have shown that the Plaintiffs were not in default on the mortgage, as the debt had been forgiven in a Confidential Settlement Agreement by EMC and Chase, corporate clients of Rogers Townsend and Spicer.

186. Rogers Townsend and Spicer as Substitute Trustees failed to show faithfulness in their duty and obligations as Substitute Trustee by failing to be impartial and protect the interests of both the debtor and the creditor.

187. Rogers Townsend and Spicer as Substitute Trustee were more concerned with their own pecuniary gain from foreclosing on Plaintiffs' property than with conducting a due diligence search of their in-house records, State and Federal Court documents, and all other

available resources which would have shown their firm had initiated foreclosure proceedings against the Plaintiffs in 2010 and that an attorney in their firm was a named party to the 2010 lawsuit.

188.    Rogers Townsend and Spicer as Substitute Trustees failed to observe reasonable commercial standards of fair dealing in their given trade as attorneys and Substitute Trustees.

189.    Rogers Townsend and Spicer as Substitute Trustees failed to show good faith in seeking an unconscionable advantage by billing for foreclosure services and moving forward with foreclosure proceedings, on behalf of their corporate clients, without thoroughly researching or investigating the status of the title to the Plaintiffs' property before again initiating foreclosure proceedings against them.

190.    As a direct and proximate result of EMC, Chase, Rogers Townsend and Spicer's breach of fiduciary duty, the Plaintiffs have suffered damages in excess of $10,000.00, and the Plaintiffs are entitled to recover such damages as they prove at trial.

191.    As a direct and proximate result of the actions of EMC, Chase, Rogers Townsend and Spicer, as set forth above, these Defendants' actions were done willfully, wantonly, maliciously, recklessly, in total disregard of the rights of the Plaintiffs, and were engaged in for the personal benefit of the Defendants.  Accordingly, the Plaintiffs are entitled to an award of punitive damages.

## FOURTH CLAIM FOR RELIEF
### Constructive Fraud
### EMC and Chase

192.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

193.    Plaintiffs relationship with EMC and Chase was more than an ordinary debtor-creditor relationship.

194.    Plaintiffs believed that a "special confidence" existed between the parties and that EMC and Chase in equity and good conscience would be bound to act in good faith and with due regard to the interests of the Plaintiffs.

195.    EMC and Chase had a special relationship with the Plaintiffs that led Plaintiffs to believe it was a relationship of trust.

196.    EMC and Chase had a fiduciary relationship with Plaintiffs.

197.    EMC and Chase took advantage of their position of trust with the Plaintiffs to the benefit of themselves by not revealing their true intent to retain the right to collect on the mortgage debt, by reneging on their promise to forgive the Plaintiffs' debt, and initiating collection and foreclosure actions against the Plaintiffs for EMC and Chase's own pecuniary gain.

198.    Plaintiffs have suffered serious emotional and financial injuries as a result of Defendants' behavior.

199.    As a direct and proximate result of the EMC and Chase committing constructive fraud against the Plaintiffs, they have suffered damages in excess of $10,000.00, and the Plaintiffs are entitled to recover such damages as they prove at trial.

200.    As a direct and proximate result of the actions of EMC and Chase, as set forth above, EMC and Chase's acts were done willfully, wantonly, maliciously, recklessly, in total disregard of the rights of the Plaintiffs, and were engaged in for the personal benefit of the Defendants.  Accordingly, the Plaintiffs are entitled to an award of punitive damages.

# FIFTH CLAIM FOR RELIEF
## Common Law Fraud
### EMC and Chase

201.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

202.    The parties participated in a mediated settlement conference on October 1, 2012, at 10:30 a.m. in the office of Bell, Davis & Pitt in Winston-Salem, North Carolina.

203.    EMC and Chase were represented by counsel, Alan Ruley and Andrew Freeman.

204.    At the mediation on October 1, 2012, at 10:30 a.m., Plaintiffs and their counsel were told by counsel for the Defendants, Alan Ruley and Andrew Freeman, that EMC and Chase would release Plaintiffs from all of the obligations evidenced in that certain promissory note dated January 30, 1997, executed and delivered by Plaintiffs to Unicor Mortgage, in exchange for the Plaintiffs' agreement to resolve all legal claims against EMC and Chase.

205.    At the mediation on October 1, 2012, Plaintiffs and their counsel were told by counsel for the Defendants, Alan Ruley and Andrew Freeman, that EMC and Chase would within a prescribed time period cause to be filed with the Alexander County Register of Deeds a release that would reflect the full satisfaction of the Deed of Trust that is recorded in Book 379 at Page 2393, in exchange for the Plaintiffs' agreement to resolve all legal claims against EMC and Chase.

206.    Thereafter counsel for EMC and Chase filed a Motion to Enforce the Settlement Agreement on June 6, 2013, and an Order was entered on November 14, 2013, enforcing the Settlement Agreement.

207.    EMC and Chase's overt act of retaining the right to collect the underlying debt by filing a release on the Alexander County Public Registry that did not reflect the parties

28

agreement represents a false representation or concealment of a material fact, which does not reflect the promises EMC and Chase made to the Plaintiffs.

208.    EMC and Chase's act of telling the Plaintiffs they would forgive the underlying debt and file a release on the Alexander County Public Registry showing a full satisfaction of the Deed of Trust in consideration of the Plaintiffs dismissal of the 2010 lawsuit, falsely led the Plaintiffs to believe that their differences had been resolved and that the Plaintiffs would own their property free and clear of any liens.

209.    EMC and Chase had a special relationship with the Plaintiffs that led Plaintiffs to believe it was a relationship of trust.

210.    EMC and Chase led Plaintiffs to believe by their promises that a special confidence existed between the parties and that EMC and Chase in equity and good conscience were bound to act in good faith and with due regard to the interests of the Plaintiffs.

211.    EMC and Chase have failed to act responsibly in the management of Plaintiffs' mortgage loan and Deed of Trust and they have failed to act in the best interests of the Plaintiffs in their dealings with them after settlement.

212.    EMC and Chase's  failure to properly record a release that would have shown a full satisfaction of the Deed of Trust, fully releasing Plaintiffs' financial obligations and EMC and Chase's  liens on the Plaintiffs' property, has resulted in serious financial and emotional stress for the Plaintiffs.

213.    Damages continue to flow from the Plaintiffs' reliance upon EMC and Chase's false promises outlined in the Confidential Settlement Agreement.

214.    EMC and Chase have made multiple misrepresentations that EMC and Chase knew were false and that were made with the intent to induce Plaintiffs to act in reliance on said representations as alleged herein, or with the expectation that Plaintiffs would so act.

215.    At the time the misrepresentations were made by EMC and Chase, and at the time Plaintiffs took the actions or failed to act as alleged herein in pursuit of purchasing a convenience store, Plaintiffs were ignorant of the falsity of Defendants misrepresentations and believed them to be true.

216.    In reasonable and justifiable reliance on such misrepresentations, Plaintiffs were induced to, and in fact did, take certain actions, to their detriment including but not limited to filing fees with the Secretary of State, escrow deposit, supplies purchased for the store and have lost potential profits from the operation of the store.

217.    As a direct, foreseeable, and proximate result of EMC and Chase's wrongful actions alleged herein, Plaintiffs have been damaged in an amount to be determined according to proof at the time of trial, in addition to equitable and/or injunctive relief, as specified in the prayer and as alleged herein.

218.    In committing the acts alleged in this cause of action, EMC and Chase acted intentionally, willfully, and with the intent to injure Plaintiffs with malice, fraud and oppression. As a result, Plaintiffs seek punitive and exemplary damages as provided by North Carolina law in an amount sufficient to punish EMC and Chase and to deter such conduct in the future.

## SIXTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### EMC and Chase

219.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

220.    EMC and Chase made false and wrongful representations regarding a material fact with the knowledge or belief of its inaccuracy when they promised to forgive the underlying mortgage debt and failed to file a release as they had promised that would have shown a full satisfaction of Plaintiffs' Deed of Trust with the Alexander County Public Registry.

221.    EMC and Chase's false representations were deceptive and were made with an intent to deceive Plaintiffs, and in fact did deceive the Plaintiffs.

222.    Plaintiffs justifiably relied to their detriment on the deceptions of EMC and Chase, as a result Plaintiffs have suffered serious harm by agreeing to resolve their legal claims against EMC and Chase, in belief that EMC and Chase would fulfill their promises of forgiving the underlying debt and record a release that would have shown a full satisfaction of the Deed of Trust.

223.    EMC and Chase have failed to act with reasonable care and Plaintiffs' reliance upon their false representations have resulted in serious damage to the Plaintiffs.

224.    EMC and Chase owed a duty to the Plaintiffs because EMC and Chase knew that the Plaintiffs were relying upon their promises that the debt would be forgiven and the Deed of Trust cancelled.

225.    EMC and Chase supplied false information to the Courts and Plaintiffs; to wit: information EMC and Chase intended for the Courts and Plaintiffs to rely upon, that was in direct contradiction to the terms of the Confidential Settlement Agreement entered into by the parties.

226.    EMC and Chase failed to use reasonable care in communicating this false information to the Courts and Plaintiffs and all parties justifiably relied upon it some to their financial detriment as described above.

227.    The Plaintiffs suffered damages as a direct and proximate result of Defendants EMC and Chase's negligent misrepresentations in an amount to be determined according to proof at the time of trial, in addition to equitable and/or injunctive relief, restitution, actual and consequential damages as specified in the prayer

## SEVENTH CLAIM FOR RELIEF
### Fair Debt Collection Practices Act
### (15 U.S.C. § 1692 *et seq.*)
### Select

228.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

229.    Plaintiffs received a notice dated July 2, 2014, from Select notifying them the servicing on their mortgage loan had been transferred from JP Morgan Chase to Select, effective July 1, 2014.

230.    Plaintiffs received a validation of debt notice dated July 11, 2014, from Select saying "Select is responsible for sending your monthly mortgage statements, accepting your monthly mortgage payments, collecting any amount due caused by your default under the terms of your Note and Mortgage and generally administering the terms of your mortgage loan."

231.    Select's acquisition of the alleged debt while the loan was in default makes it a debt collector as defined by the FDCPA.   Courts have ruled mortgage servicers who receive a loan prior to default are not covered as debt collectors (*Penny v. Stewart Elk Co.*, 756 F.2d 1197 (5th Cir., 1985); rehearing granted on other grounds, 7611 F.2d 237), but mortgage servicers who obtained the loan while it was in default are subject to the FDCPA as debt collectors *Games v. Cavazas*, 737 F.Supp. 1368 (D.C., D. Del. 1990); *Perry v. Stewart Title Co.*, 756 F.2d 1197

(5th Cir. 1985); *Schlosser v. Fairbanks Capital Corp.*, 323 F. 3d 534 (7th Cir. 2003); *Belin v. Litton Loan Serv. L.P.,* 2006 U.S. Dist. LEXIS 48547 (M.D. Fla., July 17, 2006).

232.    Select became a debt collector when it took over servicing of Plaintiffs' alleged delinquent loan and continually acknowledged its status as a debt collector in all correspondence sent to Plaintiffs.

233.    Select began mailing monthly billing statements and other correspondence attempting to collect a debt from Plaintiffs on a debt they disputed and they did not owe.

234.    These billing statements and other correspondence were misleading in that they reflected balances, interest, fees and other charges that Plaintiffs did not owe.

235.    From July 1, 2014, to March 17, 2015, Plaintiffs received more than one-hundred (100) collection telephone calls to their home by Select that were threatening, harassing and otherwise oppressive, abusive, deceptive, false and misleading.

236.    Plaintiffs received debt collection calls on their home telephone on at least the following occasions:  July 16 and 21, 2014; August 4, 13, 20, 23, 28, 29, 30; September 3, 4, 5, 6, 8, 9, 10, 13, 16, 17, 19, 20, 22, 23; October 16, 20, 21, 30, 31; November 1, 3, 5, 6, 12, 13, 14, 15, 17, 18, 19, 20; January 6, 20, 23, 24, 27, 28, 29, 31; February 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 23, 28; March 2, 3, 5, 6, 7, 9, 10, 12, 13, 17.

237.    On many days Plaintiffs received more than one call per day with voicemails left on most of the calls that were not answered.

238.    Each of these telephone calls and mailings were "communications" in an attempt to collect a debt as defined at 15 U.S.C. 1692a(2).

## Rogers Townsend and Spicer

239.     As alleged above, Rogers Townsend and Spicer pursued a foreclosure action without legal justification against Plaintiffs.

240.     A "debt collector" is defined under the Fair Debt Collection Practices Act as "any person who…[operates] any business for the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect…debts owed….another." 15 U.S.C. §1692a(6).

241.     Attorneys hired by creditors may be held liable as a "debt collector" under the Fair Debt Collection Practices Act, where they "regularly" engage in debt collection.  *Nielson v. Dickerson*, 307 F.3d 623 (7th Cir. 2002).

242.     On all correspondence sent to the Plaintiffs by their firm, Rogers Townsend identifies itself as a "debt collector."

243.     Rogers Townsend and Spicer mailed illegal foreclosure notices and other misleading debt collection letters to Plaintiffs when they knew or should have known that Plaintiffs did not owe anything on their mortgage loan.

244.     The collection documents that were mailed to Plaintiffs are misleading in that they state incorrect balances, fees, interest, forced placed insurance charges, and unpaid taxes for a loan that is not owed by Plaintiffs.

245.     These documents are further misleading in that they reflect a different balance than that reported by Select on Matthew Lacey's Transunion credit report.

246.     In communications to Plaintiffs by Select, Rogers Townsend, and Spicer, each communication:

a.     falsely represented the character, amount or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(a) by claiming that the home was headed to foreclosure, by misrepresenting the balance and activity of the loan, by stating that the loan was in default, when the mortgage was to be forgiven pursuant to a Confidential Settlement Agreement, and other ways to be shown at trial;

b.     harassed, oppressed or abused Plaintiffs by repeatedly demanding that Plaintiffs pay a debt they no longer owed in violation of 15 U.S.C. § 1692d, in order for themselves to be paid;

c.     communicated information about the alleged debt to third parties by filing and publishing the foreclosure in violation of 15 U.S.C. § 1692c(b);

d.     used false, deceptive or misleading representations in telling Plaintiffs they were headed to foreclosure in violation of 15 U.S.C. § 1692e when those accusations were false;

e.     reported or threatened to report false information to a credit bureau in violation of 15 U.S.C. § 1692e(8) in that the home should not have been in foreclosure and that it should not have been in default and other ways to be shown at trial;

f.     communicated information about a disputed debt to a credit bureau without reporting that it was disputed in violation of 15 U.S.C. § 1692e(8) in that Plaintiffs have disputed the status of the loan many times over the course of the debt collection efforts of the Defendants;

g.        attempted to collect amounts not explicitly authorized by agreement or permitted by law in violation of 15 U.S.C. § 1692f(1) in that Defendants attempted to collect and foreclose on a debt that was forgiven and not authorized by any valid agreement creating a debt;

h.        collected an alleged debt by unfair or unconscionable means in violation of 15 U.S.C. § 1692f  in that Defendants attempted to collect a debt and foreclose on a home that they knew or should have known was forgiven;

i.        caused the telephone to ring or engage Plaintiffs in telephone conversations repeatedly in violation of 15 U.S.C. § 1692d(5) in that Plaintiffs did not owe the debt and repeatedly told the representatives the property had been given to them pursuant to a Confidential Settlement Agreement but the Defendants continued to contact them with excessive frequency;

j.        used false or misleading representations in communicating with Plaintiffs while pursuing a foreclosure action not authorized by law, attempting to collect fees and charges not authorized by law in violation of 15 U.S.C. § 1692e;

k.        used false or misleading representations in communicating with Plaintiffs while pursuing a foreclosure action and threatening to seize their property in violation of 15 U.S.C. § 1692e(4);

l.        used false or misleading representations in communicating with Plaintiffs while pursuing a foreclosure action and threatening to take action that could not legally be taken in violation of 15 U.S.C. § 1692e(5); and

m.    such other actions as may be shown at trial.

247.    The foregoing acts and omissions of Select, Rogers Townsend and Spicer, constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq*., with respect to these Plaintiffs.

248.    These acts and omissions of Defendants Select, Rogers Townsend, and Spicer, have all caused Plaintiffs humiliation, emotional and financial distress and left them in constant fear of losing their home when they were told pursuant to a Confidential Settlement Agreement that they owned their home free and clear of all liens.

249.    As a result of each and every one of Defendants Select, Rogers Townsend, and Spicer's violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant herein.

<u>**EIGHTH CLAIM FOR RELIEF**</u>
**North Carolina Prohibited Practices by Collection Agencies Act**
**(N.C. Gen. Stat. §58-70-90, *et. seq.*)**
**Select**

250.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

251.    Select, in repeatedly demanding that Plaintiffs pay it monies not owed and by threatening actions not permitted by law (such as foreclosure while Plaintiffs had been given the home free and clear of all liens pursuant to a Confidential Settlement Agreement) have committed acts that are an unfair coercion or attempt to coerce in attempting to collect a debt in violation of N.C. Gen. Stat. § 58-70-95.

37

252.     From July 1, 2014, to March 17, 2015, Plaintiffs received more than one-hundred (100) collection telephone calls to their home by Select that were threatening, harassing and otherwise oppressive, abusive, deceptive, false and misleading.

253.     Plaintiffs received debt collection calls on their home telephone on at least the following occasions:  July 16 and 21, 2014; August 4, 13, 20, 23, 28, 29, 30; September 3, 4, 5, 6, 8, 9, 10, 13, 16, 17, 19, 20, 22, 23; October 16, 20, 21, 30, 31; November 1, 3, 5, 6, 12, 13, 14, 15, 17, 18, 19, 20; January 6, 20, 23, 24, 27, 28, 29, 31; February 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 23, 28; March 2, 3, 5, 6, 7, 9, 10, 12, 13, 17.

254.     On many days Plaintiffs received more than one call per day with voicemails left on most of the calls that were not answered.

255.     Select, in causing Plaintiffs telephone to ring or engaging them in conversation with unreasonable frequency after being told the Plaintiffs do not owe the debt and that they own the home free and clear of any liens pursuant to the Confidential Settlement Agreement, represents conduct the natural consequence of which is to oppress, harass or abuse a person in connection with an attempt to collect a debt and violates N.C. Gen. Stat. § 58-70-100 generally and §§58-70-100 (1) and (3) specifically.

256.     Select, in communicating with the Plaintiffs by telephone without disclosing that the communications were from a debt collector and that any information obtained would be used for that purpose, and by recording a Document of Rescission that should never have been recorded because the property was given to the Plaintiffs by EMC and Chase, have attempted to collect a debt by fraudulent, deceptive or misleading representations in violation of N.C. Gen. Stat. § 58-70-110.

257.     Select, in repeatedly telling Plaintiffs their home was going to be foreclosed on (even though they owned the home free and clear of any liens pursuant to a Confidential Settlement Agreement) demonstrates that the Defendants have attempted to collect a debt by threatening to take an action not permitted by law in violation of N.C. Gen. Stat. § 58-70-95(8).

258.     Select, in proceeding with a wrongful foreclosure on the Plaintiffs property when they own the property free and clear of all liens pursuant to a Confidential Settlement Agreement, have collected or attempted to collect a debt by unfair means in violation of N.C. Gen. Stat. § 58-70-115 and by conduct the natural consequence of which is to oppress, harass or abuse a person in connection with the attempt to collect the debt in violation of N.C. Gen. Stat. § 58-70-100.

259.     Select, by wrongfully filing and publishing a foreclosure action against Plaintiffs has unreasonably publicized information regarding their alleged debt in violation of N.C. Gen. Stat. § 58-70-105.

260.     Select, by collecting or attempting to collect from the Plaintiffs all or any part of the collection agency's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt such as any amounts in the suspense account described above or any fees wrongfully charged to the escrow account like mortgage verification fees, broker price opinions, force placed insurance premiums and inspection fees when Defendant were not legally entitled to such fee or charge, has violated N.C. Gen. Stat. § 58-70-115(2).

261.     Select's use of threats, coercion, harassment, unreasonable publication of the debt, deceptive representations and unconscionable means to collect an alleged debt as described above constitute unfair and deceptive acts.

262.     Select's actions as described above have proximately caused humiliation, embarrassment, emotional and financial distress and other mental suffering to Plaintiffs.

263.     As a result of Select's violations of the North Carolina Prohibited Practices by Collection Agencies Act, the Plaintiffs are entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 per violation pursuant to N.C. Gen. Stat. §58-70-130; and, reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. §75-16.

**NINTH CLAIM FOR RELIEF**
**North Carolina Debt Collection Act**
**(N.C. Gen. Stat. §75-50, *et. seq.*)**
**Select**

264.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

265.     In the alternative, if Select is determined not be a collection agency pursuant to N.C. Gen. Stat. §§ 58-70-15 and 58-70-90, then it is alleged to be a debt collector as defined in the NCDCA as alleged above and has violated the NCDCA as described below.

266.     Select, in repeatedly demanding that Plaintiffs pay it money that was not owed and by threatening foreclosure action not permitted by law while Plaintiffs owned the home free and clear of all liens pursuant to the Confidential Settlement Agreement, have committed acts that are an unfair coercion or attempt to coerce in attempting to collect a debt in violation of N.C. Gen. Stat. § 75-51.

267.     Select, in repeatedly telling Plaintiffs they were going to be foreclosed on even though they owned the home free and clear of all liens pursuant to the Confidential Settlement Agreement, have attempted to collect a debt by threatening to take an action not permitted by law in violation of N.C. Gen. Stat. § 75-51(8).

268.     Select, in proceeding with a wrongful foreclosure on the Plaintiffs' property when they owned the home free and clear of all liens pursuant to the Confidential Settlement Agreement, have collected or attempted to collect a debt by unconscionable means in violation of N.C. Gen. Stat. § 75-55 and by conduct the natural consequence of which is to oppress, harass or abuse a person in connection with the attempt to collect the debt in violation of N.C. Gen. Stat. § 75-52.

269.     Plaintiffs received debt collection calls on their home telephone on at least the following occasions:  July 16 and 21, 2014; August 4, 13, 20, 23, 28, 29, 30; September 3, 4, 5, 6, 8, 9, 10, 13, 16, 17, 19, 20, 22, 23; October 16, 20, 21, 30, 31; November 1, 3, 5, 6, 12, 13, 14, 15, 17, 18, 19, 20; January 6, 20, 23, 24, 27, 28, 29, 31; February 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 23, 28; March 2, 3, 5, 6, 7, 9, 10, 12, 13, 17.

270.     On many days Plaintiffs received more than one call per day with voicemails left on most of the calls that were not answered.

271.     Select's condescending and rude conduct in conversations with Plaintiffs after being told Plaintiffs do not owe the debt represents conduct the natural consequence of which is to oppress, harass or abuse a person in connection with an attempt to collect a debt and violates N.C. Gen. Stat. § 75-52.

272.     Select, in causing Plaintiffs' telephone to ring or engaging them in conversation with unreasonable frequency engaged in conduct the natural consequence of which is to oppress, harass or abuse a person in connection with an attempt to collect a debt and violates §75-52(3).

273.     Select, in filing the <u>Document of Rescission</u> and later filing the foreclosure action and publishing it in attempting to collect Plaintiffs' alleged debt have unreasonably publicized information regarding their debt in violation of N.C. Gen. Stat. §75-53.

274.    Select, in communicating with the Plaintiffs by telephone without disclosing that the communications were from a debt collector and that any information obtained would be used for that purpose, have attempted to collect a debt by fraudulent, deceptive or misleading representations, in violation of N.C. Gen. Stat. § 75-54 generally and § 75-54(2) specifically.

275.    Select, by collecting or attempting to collect from the Plaintiffs all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt (such as any amounts in a suspense account or any fees wrongfully charged to the escrow account like mortgage verification fees, force placed insurance premiums and inspection fees, force-placed insurance and taxes) when Defendants were not legally entitled to such fee or charge, has violated N.C. Gen. Stat. § 75-55 generally and §75-55(2) specifically.

276.    Select's use of threats, coercion, harassment, unreasonable publication of the debt, deceptive representations and unconscionable means as described above constitute unfair and deceptive acts.

277.    Select's actions described above have proximately caused humiliation, embarrassment, emotional and financial distress and other suffering to Plaintiffs.

278.    As a result of Select's violations of the North Carolina Debt Collection Act, the Plaintiffs are entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 per violation pursuant to N.C. Gen. Stat. §75-56; and, reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. §75-16.

279.    The above violations of the NCDCA constitute unfair or deceptive acts or practices proscribed in N.C. Gen. Stat. 75-1.1 and entitle the Plaintiff to punitive damages in addition to any other damages suffered.

**Chase**

280.    Chase, in repeatedly demanding that Plaintiffs pay it money that was not owed and by threatening foreclosure action not permitted by law while Plaintiffs owned the home free and clear of all liens pursuant to the Confidential Settlement Agreement, have committed acts that are an unfair coercion or attempt to coerce in attempting to collect a debt in violation of N.C. Gen. Stat. § 75-51.

281.    Chase, in repeatedly telling Plaintiffs they were going to be foreclosed on even though they owned the home free and clear of all liens pursuant to the Confidential Settlement Agreement, have attempted to collect a debt by threatening to take an action not permitted by law in violation of N.C. Gen. Stat. § 75-51(8).

282.    Chase, in proceeding with a wrongful foreclosure on the Plaintiffs' property when they owned the home free and clear of all liens pursuant to the Confidential Settlement Agreement, have collected or attempted to collect a debt by unconscionable means in violation of N.C. Gen. Stat. § 75-55 and by conduct the natural consequence of which is to oppress, harass or abuse a person in connection with the attempt to collect the debt in violation of N.C. Gen. Stat. § 75-52.

283.    Chase, in concert with Select filing the Document of Rescission and later filing the foreclosure action and publishing it in attempting to collect Plaintiffs' alleged debt, have unreasonably publicized information regarding their debt in violation of N.C. Gen. Stat. §75-53.

284.    Chase, by collecting or attempting to collect from the Plaintiffs all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt such as any amounts in a suspense account or any fees wrongfully charged to the escrow account like mortgage

verification fees, force placed insurance premiums and inspection fees when Defendants were not legally entitled to such fee or charge, has violated N.C. Gen. Stat. § 75-55 generally and §75-55(2) specifically.

285.     Chase's use of threats, coercion, harassment, unreasonable publication of the debt, deceptive representations and unconscionable means as described above constitute unfair and deceptive acts.

286.     Chase's actions described above have proximately caused humiliation, embarrassment, emotional and financial distress and other suffering to Plaintiffs.

287.     As a result of Chase's violations of the NCDCA, the Plaintiffs are entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 per violation pursuant to N.C. Gen. Stat. §75-56; and, reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. §75-16.

288.     The above violations of the NCDCA constitute unfair or deceptive acts or practices proscribed in N.C. Gen. Stat. 75-1.1 and entitle the Plaintiff to punitive damages in addition to any other damages suffered.

**TENTH CLAIM FOR RELIEF**
**Ordinary Negligence**
**EMC and Chase**

289.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

290.     Plaintiffs' relationship with EMC and Chase was more than an ordinary debtor-creditor relationship.

291.     Plaintiffs entered into a Confidential Settlement Agreement with EMC and Chase and trusted that EMC and Chase would honor the terms of the contract between the parties.

292.    Plaintiffs trusted that EMC and Chase would fulfill their promises by forgiving the underlying debt and recording a release that would have shown a full satisfaction of the Deed of Trust.

293.    Plaintiffs were led to believe by that a special confidence existed between the parties and that EMC and Chase in equity and good conscience were bound to act in good faith and with due regard to the interests of the Plaintiffs.

294.    EMC and Chase had a special relationship with the Plaintiffs, one that led Plaintiffs to believe it was a relationship of trust.

295.    EMC and Chase led Plaintiffs to believe that a special confidence existed between the parties and that any actions taken by either party were actions taken based on the belief that the other side was telling the truth.

296.    A fiduciary duty arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence. *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)

297.    EMC and Chase had a fiduciary relationship with Plaintiffs.

298.    EMC and Chase owed a duty to tell the Plaintiffs their true intent and not to make false promises and then collect on a debt not owed and initiate foreclosure proceedings on Plaintiffs' home without justification.

299.    EMC and Chase breached that duty by reneging on their promise to forgive the underlying debt and failing to record a release that would have shown a full satisfaction of Plaintiffs' Deed of Trust.

300.     Defendants EMC and Chase breached their fiduciary duty to Plaintiffs by not revealing to the Plaintiffs their true intent which was to retain the mortgage debt for collection purposes to benefit themselves.

301.      EMC and Chase's overt actions of reneging on their promises to Plaintiffs shows a failure on both corporations' behalf to observe reasonable commercial standards of fair dealing.

302.     EMC and Chase sought an unconscionable advantage by reneging on their promises to Plaintiffs.

303.     EMC and Chase failed to act with due regard to the Plaintiffs' interests.

304.      EMC and Chase gained an unfair advantage over Plaintiffs by their deceitfulness and unfair methods.

305.     EMC and Chase's breach of its duties to Plaintiffs was the proximate cause of the harm to Plaintiffs described in this Complaint.

**Rogers Townsend and Spicer**

306.     Rogers Townsend and Spicer had a fiduciary duty to act with due regard to Plaintiffs' interests.

307.     Rogers Townsend and Michael Spicer as Substitute Trustees breached their fiduciary duty to Plaintiffs and were negligent in failing to conduct a due diligence search of Plaintiffs' title before initiating another foreclosure action against them.

308.     Rogers Townsend and Spicer, by and through their agents, servants and employees, knew or should reasonably have known the outcome of Plaintiffs' case that was filed in the United States District Court for the Western District of North Carolina, Statesville Division, Civil Action No. 5:10-CV-173.

309.    Rogers Townsend and Spicer's breach of their duties to Plaintiffs have proximately caused them emotional and financial damages.

310.    Plaintiffs have suffered serious emotional and financial harm as a result of EMC, Chase, Rogers Townsend and Spicer's negligence and breach of fiduciary duty.

311.    As a result of EMC, Chase, Rogers Townsend and Spicer's negligence, the Plaintiffs are entitled to actual damages, compensatory damages and punitive damages as determined by a jury.

**ELEVENTH CLAIM FOR RELIEF**
**Fair Credit Reporting Act**
**Select**

312.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

313.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

314.    15 U.S.C. § 1681n imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

315.    15 U.S.C. § 1681o provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

316.    Select failed to accurately report Mr. Lacey's trade line by reporting that he was in foreclosure when he had been given the property through a Confidential Settlement Agreement causing the reported information to be "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Mr. Lacey. *Gorman v. Wolpoff &*

*Abramson, LLP, et al*., 584 F.3d 1147 (9th Cir. 2009); *See also Saunders v. Branch Banking &*
*Trust Co. of Va*., 526 F.3d 142 (4th Cir. 2008).

317.    Mr. Lacey's Transunion credit report reflected a tradeline from Select as late as
March of 2015 that listed an account with it "120 days past due"; "Maximum Delinquency of
120 days in 10/2014 for $52,298 and in 02/2015 for $54,980"; and "Last Payment Made
04/01/2008."

318.    The Transunion credit report was inaccurate.

319.    Mr. Lacey disputed this tradeline with Transunion in the spring of 2015 and the
tradeline was removed.

320.    As a direct and proximate result of Select's willful and/or negligent refusal to
comply with the FCRA as outlined above, Mr. Lacey has suffered substantial loss and damage
including, but not limited to: economic loss due to loss of opportunity to obtain credit, damage to
reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress,
frustration and embarrassment, entitling him to an award of actual damages in amounts to be
proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. §
1681o.

321.    Select's indifference as to its obligations under the FCRA reveals a conscious
disregard of the rights of Mr. Lacey, and the injuries suffered by Mr. Lacey are attended by
circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of
punitive damages against Select, pursuant to 15 U.S.C. § 1681n(a)(2).

## TWELFTH CLAIM FOR RELIEF
### Conversion
### EMC and Chase

322.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

323.    Plaintiffs pledged their property as collateral for a mortgage loan in 1997 thereby providing the note holder with the right to foreclosure on the property should they fail to pay the underlying debt.

324.    EMC and Chase agreed to forgive Plaintiffs' underlying debt and file a release that would show a full satisfaction of the Deed of Trust on the Alexander County Public Registry.

325.    EMC and Chase's action of filing the Rescission of the Cancellation of the Deed of Trust in the Alexander County Public Registry had the effect of transferring back to EMC and Chase their interest in the Deed of Trust and in Plaintiffs' property.

326.    EMC and Chase's actions of reneging on their promises and initiating foreclosure proceedings against the Plaintiffs and attempting to take back their rights as holder of the note on a property that had been given to the Plaintiffs, amounts to an unauthorized assumption and exercise of EMC and Chase's right to ownership.

327.    The Plaintiffs suffered damages as a direct and proximate result of Defendants' conversion of their property in an amount to be determined according to proof at the time of trial.

## THIRTEENTH CLAIM FOR RELIEF
### Civil Conspiracy
### EMC, Chase, Select, Rogers Townsend and Spicer

328.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

49

329.    Defendants have committed a civil conspiracy against Plaintiffs by the following acts:

(a)  Defendants acted in agreement to collect and foreclose on Plaintiffs' property without justification;

(b)  Defendants committed wrongful acts:  they colluded to collect and foreclose on a property that had been given to the Plaintiffs free and clear;

(c)   These wrongful acts resulted in injury to Plaintiffs;

(d)   These wrongful act were committed pursuant to the common scheme: Defendants wanted to profit from collecting and foreclosing on Plaintiffs' property without right or justification.

330.    Defendants engaged in a civil conspiracy based upon these and all actions alleged in this Complaint, as such, Plaintiffs suffered damages as enumerated throughout this Complaint and they are entitled to damages to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

1.      Grant a declaratory judgment that EMC and Chase are bound by the promises and representations they made in the Confidential Settlement Agreement between the parties;

2.      Grant a declaratory judgment that Plaintiffs' contractual rights have been violated;

3.      Order EMC and Chase to fulfill their contractual obligations by recording a proper Notice of Satisfaction in the Alexander County Register of Deeds;

4.      Award Plaintiffs' compensatory damages in an amount to be determined according to proof at the time of trial; specific performance of the contract; actual and

consequential damages, including expectation of lost profits from the convenience store for breach of contract;

5.      Award Plaintiffs actual damages, compensatory damages and punitive damages for fraud, negligent misrepresentation, and conversion;

6.      Award Plaintiffs damages for Civil Conspiracy, including all that result from the conspiracy, jointly and severally, including actual damages, compensatory damages, punitive damages, loss of income, emotional damages and attorney fees;

7.      Award Plaintiffs' costs of litigation and reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1 and 15 U.S.C. § 1692k(a)(3) from each and every Defendant jointly and severally;

8.      Award Plaintiffs damages in excess of $10,000.00 for EMC, Chase, Rogers Townsend and Spicer's breach of fiduciary duty;

9.      Award Plaintiffs punitive damages if by law allowed;

10.     Award Plaintiffs actual damages in an amount to be determined at trial, treble damages and attorney fees for violation of N.C. Gen. Stat. §75-1.1;

11.     Award Plaintiffs actual damages in an amount to be determined at trial and statutory damages of $1,000.00 pursuant to the violations of the Fair Debt Collection Practices Act alleged therein;

12.     Award Plaintiffs actual damages in an amount to be determined at trial and $4000 in statutory damages per violation, pursuant to the violations of N.C. Gen. Stat. § 58-70-90, *et. seq.* alleged therein;

13.     Award Plaintiffs actual damages in an amount to be determined at trial, $4000 in statutory damages per violation, and punitive damages pursuant to the violations of N.C. Gen. Stat. § 75-50, *et. seq.* alleged therein;

14.     Award Plaintiffs Actual or statutory damages pursuant to 15 U.S.C. §§1681n and 1681o, costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n and 1681o, and punitive damages pursuant to 15 U.S.C. §§1681n;

15.     Award Plaintiffs the costs of suit, any discretionary costs as may be allowable by law, pre-judgment and post-judgment interest from each and every Defendant jointly and severally;

16.     That they have a trial by jury on all issues so triable;

17.     Award Plaintiffs treble damages if by law allowed; and

18.     For such other and further relief as the Court may deem just and proper.

This the 11th day of November, 2015

By:     s/ Travis E. Collum
        NC Bar No. 29158
        Attorney for Plaintiffs
        Collum & Perry, PLLC
        Post Office Box 1739
        Mooresville, NC 28115
        Telephone: 704-663-4187
        Facsimile: 704-663-4178
        travis@collumperry.com

        s/Stacy L. Williams
        NC Bar No. 26874
        Attorney for Plaintiffs
        *Of Counsel*
        Collum & Perry, PLLC
        Post Office Box 1739
        Mooresville, NC 28115
        Telephone: 704/ 663-4187
        Facsimile: 704/ 663-4178
        stacy@collumperry.com